## JOHNSON v. FEDERAL COMPRESS & WAREHOUSE CO. et al.

### No. 6005.

Court of Appeal of Louisiana.
Second Circuit.

Dec. 1, 1939.

Rehearing Denied Jan. 5, 1940.

Writ of Certiorari and Review Denied
March 4, 1940.

A. Milling Bernstein, of Monroe, for appellants.

Dhu Thompson, of Monroe, for appellee.

DREW, Judge.

This is a suit under the Workmen's Compensation Law. Act No. 20 of 1914. There is no denial of the accident and injury, or that the defendants are liable for compensation in some amount.

The first defense is that the suit was premature, and the defense on the merits is that plaintiff was well of all injuries at the time suit was filed, and that he is a malingerer.

The lower court rendered judgment for plaintiff for 65% of his weekly wage for a period of not more than 400 weeks. It is from that judgment the defendants are prosecuting this appeal.

Defendant operates a cotton compress and storage company. In the storage department of its place of business cotton was stacked three bales high, and narrow lanes were left open at intervals through the cotton in which to truck it out as it became necessary to move it. It was while pulling a hand truck, loaded with a bale of cotton, out one of these narrow lanes that one of the top bales fell off, striking plaintiff on the shoulders and back and pinning him face down onto the floor. The weight of the bale of cotton remained on his back until it was removed by some of his fellow employees.

Plaintiff was carried to the sanitarium, where he was treated and remained from October 19, 1938, the date of the accident, until October 24, when he was returned to his home. He visited the doctors employed by defendants to treat him daily until November 17, at which time they told him he was practically well. However, they did not discharge him. Plaintiff was apparently dissatisfied and went to a doctor of his own choosing. He also consulted his present lawyer.

Up to this time it is certain that no compensation had been paid plaintiff nor any offered him, although he had been to defendants' office on more than one occasion to see if any compensation check was there for him. Plaintiff's counsel made demand upon defendants, who turned the matter over to their lawyer. Just what took place in the conversation between the counsel for plaintiff and counsel for defendants is not made clear. Their testimony differs widely. Defendants' counsel testified that he offered to pay the compensation due, up to the time the suit was filed, to plaintiff's counsel; and he refused it. Plaintiff's counsel denies that he was offered payment unconditional-

ly, and states that the entire conversation appertained to a full settlement of the claim. This testimony came out on the trial of the exception of prematurity, which was not tried in limine but after the case had been tried on its merits. When the plea of prematurity was filed, defendants accompanied it with the amount of compensation due up to that time, together with the accrued costs. They did not tender any other payments after that time, nor did they admit they owed any more compensation or would owe any more in the future. To the contrary, they set up in answer to the petition of plaintiff that he was entirely well and was a malingerer, and the suit was tried on that issue.

■ We are of the opinion the plea of prematurity should have been tried and determined in limine. But since it was not, and was tried after the case was tried on the merits, it has lost any merit it might have had. For us to hold now that the action was premature would only be to require plaintiff to re-file and re-try the case which has been well tried on all the issues that could be raised. Furthermore, under the testimony received on the plea, we would not be justified in sustaining the plea of prematurity; for it is certain no compensation was ever paid or tendered, and just what took place or was said in the conversation between the two counsel is very uncertain, due to the divergent views they have taken regarding it.

■ A plea of vagueness was also filed by defendants and overruled below. No harm came to defendants on account of that ruling, as it does not appear they were taken by surprise by any evidence offered by plaintiff and they were fully prepared to meet every issue raised.

■ The sole and only issue in the case on its merits is whether or not plaintiff is a malingerer. The record consists of 416 pages, the greater part of which is filled with medical testimony regarding plaintiff's condition. Every doctor who testified regarding the condition of plaintiff's back testified from the same X-ray plates, which were many in number. It is admitted that all of the plates, no matter by which X-ray expert they were made, showed the same things. Plaintiff's medical experts all could see in these plates evidence of fractures, and the defendants' medical experts could not see any evidence of fractures. One of defendants' medical men saw evidence of abnormalities which he thought were congenital; and others could not see any abnormalities of the back whatsoever.

The lay testimony is conclusive that plaintiff has not performed any work of any kind since the date of the accident. He complains of pain when he attempts to bend his body, and contends he is not able physically to perform any labor of a reasonable character.

At the conclusion of the trial below, the court dictated into the record the following:

"I think the case was clearly with the plaintiff until this kind of a test was made. As to his ability to do things in the nature of work. This is something that I hadn't thought of and just came up today and I am not exactly in a position to express myself. The very purpose of the Compensation Act is to compensate a person for impairment of their earning capacity. One of the defenses being that the plaintiff is a malingerer, and which has been an outstanding issue in the case. The evidence on that subject or that issue has not been convincing to me. That is, I couldn't say that he is a malingerer. The courts generally have been very slow to adjudge an employee or any other person for that matter as being a malingerer. The whole picture here opens up with an accident where a bale of cotton fell on the plaintiff or against him. The preponderance of testimony is that the bale of cotton had to be moved before he could get up. The plaintiff's testimony or the testimony of the plaintiff's witnesses, together with his testimony, and other circumstances in the case, is strongly in favor of his inability to do work to the extent that he could earn a living. In other words, his earning capacity has been destroyed. He couldn't do work of a general character under a prima facie case made on his side. There is a great conflict, and it is very sharp, as to the medical testimony. There are points, however, as sharp as the testimony may seem from the doctors who testified for the defense in favor of some of the material testimony given by the plaintiff, and on the whole testimony it appears to me that this plaintiff is totally and permanently disabled to do manual work or manual labor of a general or reasonable character. That is, his earning capacity has been destroyed or impaired to that degree that it would be considered total. As I said before, I cannot under the testimony and my observance of the plaintiff during the trial adjudge him

a malingerer. I think the preponderance of testimony is in favor of the plaintiff. I will, however, carry this over until one day next week when I will decide it."

An application for rehearing was filed and the lower court was requested to give a written opinion in the case, which it did. It is as follows:

"This case was tried on the merits and judgment was rendered for plaintiff.

"Defendant has applied for a new trial and/or rehearing and requested the Court to give written reasons for judgment.

"This is another one of those cases where it is impossible to reconcile the testimony of the experts. Based on the expert testimony alone, each side made out its case.

"My conclusions must necessarily be based on a preponderance of the whole testimony, and this will include my impressions from observations, and otherwise, as well as that disclosed by the record.

"As the trial judge, I heard all of the testimony and observed the plaintiff, as well as all the other lay witnesses, during the trial, and it would be impossible for me to detail the many things that brought me to a decision of the case.

"The taking of plaintiff from under a bale of cotton by his co-laborers and sending him to a hospital, merits a thorough investigation for internal as well as external injuries. At the hospital two sets of X-rays were made. Dr. Moore, in substance, said the second set was made because of a report that plaintiff was spitting up blood.

"After a short stay at the hospital plaintiff was sent to his home but continued to visit the physicians at their office for treatment. The plaintiff claimed that the physician later discharged him as well and able to return to work. The physicians claimed that they had not discharged him, but considered him well enough to return to work. Anyway, plaintiff went to another physician.

"I was also assisted in my decision by my observation of plaintiff's reactions to the physical examinations and demonstrations made in the courtroom during the trial.

"I do not agree that the test made by defendant in having plaintiff push an automobile proved his ability to work. Nearly every colored man would have done the same thing, in such circumstance, regardless of pain or consequences.

"While the medical testimony could be said to be mountain-high on each side, and about equal, it might also be said that the testimony of Dr. Smith, an X-ray expert called by defendant, gave some evidence favorable to plaintiff. In my appreciation, his testimony was to the effect that the X-rays disclosed sufficient disturbances in and about the backbone to give the plaintiff pain and probably render him unable to work, but that he did not think such was the case.

"If plaintiff is not a malingerer he has made out his case. He is not a malingerer in my opinion, based on my view of the whole case as hereinabove explained.

"Defendant in the beginning requested the court to appoint physicians as experts to examine plaintiff and testify in the case. I declined because I could not limit the number of other such experts, and also that as plaintiff was litigating under the 'pauper' act there is no law by which such experts could be compensated in case plaintiff lost.

"I see no reason for changing my decision, therefore, let the motion for a new trial and/or rehearing be overruled.

"J. T. Shell,
"Judge."

Defendants complain that the Dr. Smith referred to in the above opinion was a witness for plaintiff and not for defendants. That is true, but we fail to see where that could make any great difference.

The lower court stated in its opinion that the observation he made of plaintiff during the trial helped him to decide the case. We feel sure the lower court is correct in that statement, for we are convinced that the medical testimony is so conflicting as to be of no material value to the court in arriving at a conclusion in the case. If there was ever a case where the rule that the judgment of the lower court, who heard and saw the witnesses, should not be disturbed on a finding of fact unless it is manifestly erroneous, should be invoked, this is one; for the very reason that the lower court based its opinion largely on its observation of the plaintiff and the lay witnesses in the case. We are not able to say the opinion arrived at by the lower court is incorrect.

The defendants offered motion pictures taken of plaintiff pushing an automobile to prove he was not injured, and was able to work. Plaintiff showed, in rebuttal to this testimony, that he was in a cast extending from his arms to his hips, which cast was put on him while his body was fully extended; and as long as this cast was on he

could push a car without injury or pain. The lower court, we think, correctly disposed of this contention.

We find no 'reason for disturbing the judgment of the lower court, and it is affirmed with costs.